Bolton *v.* Stretch.

JOSEPH D. BOLTON

*v.*

ROBERT STRETCH, executor, &c., and others.

1. Where a testator, by his will, gave the residue of his estate to his widow *durante viduitate*, and directed that, after she should cease to be his widow, his executors should sell his estate, real and personal, remaining, and gave the proceeds of the sale to such of his children as should then be living, in equal shares,—*Held*, that the interest of the children in the land was subject to the power of sale, and that the power was not liable to be defeated by one or more (less than the whole number) of the beneficiaries thereunder, to the prejudice of the others or any of them, and that, after the sale, it was too late to exercise the power of election. Therefore, that the purchaser of the real estate at the executors' sale took title clear of a levy under an execution on a judgment against one of the children.

2. A notice given by the sheriff to the executor, that he held an execution on the judgment, and had made a levy thereunder, when, in fact, no execution had been delivered to him,—*Held*, not to be notice of the execution. It was a notification of the alleged existence of facts which really had no existence, and was, therefore, of no importance, and imposed no duty on the executors.

Bill for relief. On final hearing on pleadings.

*Mr. W. C. Dayton* and *Mr. H. A. Drake*, for complainant.

*Mr. W. E. Potter*, for the executor.

*Mr. S. H. Grey*, for Joseph Stretch.

THE CHANCELLOR.

Thomas Stretch, deceased, by his will, which was admitted to probate in 1854, gave the residue of his estate to his wife *durante viduitate*, and directed that after she should cease to be his widow his executors should sell all his estate, real and personal, then remaining; and he gave the proceeds of

such sale to his ten children, or to such of them as should then be living, in equal shares. His wife, who survived him, died November 25th, 1875. Part of the residuary estate was a farm of about one hundred acres, in Gloucester county, which, after her death, and on the 28th of October, 1876, was sold by the surviving executor at public auction, to David B. Waddington, for $4,075.50, to whom the executor conveyed it by deed dated November 11th, 1876. Waddington, on the 20th of February, 1877, sold and conveyed the property to Absalom M. Wallace. In the life-time of the widow, on the 31st of May, 1859, the complainant recovered judgment in the Gloucester circuit court against Joseph Stretch, one of the testator's sons, for $304.47. No execution, however, was issued thereon until December 24th, 1875. Under a writ then issued upon it, a levy was made on the right, title and interest of Joseph Stretch in the farm, and in March, 1877, the sheriff sold and conveyed his right, title and interest, under the execution, to the complainant. On the 1st of December, 1875, the sheriff wrote to the surviving executor as follows:

" I have an execution against Joseph Stretch in favor of Joseph D. Bolton, and have levied on all the undivided right, title and interest of the real and personal property of Thomas Stretch, deceased, that may be due Joseph Stretch, and this is a notice to you that the execution must be satisfied before paying anything over to Joseph Stretch."

At the date of that letter no execution had been issued on the judgment, nor was any issued thereon until twenty-three days afterward. The sheriff gave to the executor no other notice until November 27th, 1876, sixteen days after the date of the conveyance of the farm by the executor to Waddington. He then wrote to the executor that the complainant had called to see him about the judgment, and had directed him to advertise Joseph Stretch's interest in his father's estate unless the judgment should be paid in a short time. The complainant himself gave no notice to the executor, although he was present at the sale, by the latter, of

the farm. The executor, on the 14th of November, 1876, paid over to Joseph Stretch (who demanded it of him) his share of the proceeds of the sale of the farm. Before doing so he consulted counsel as to his duty, in view of the notice given to him on the 1st of December, 1875, on the one hand, and the demand of Joseph Stretch on the other, and he was advised by them that, in the absence of any judicial mandate or direction in the premises, he was bound to comply with the demand of Joseph Stretch. It will have been seen that the sale by the sheriff was after the conveyance by the executor to Waddington. The complainant's counsel insist that the lien of the levy by the sheriff was not affected by the sale by the executors. But Joseph Stretch's interest in the farm was subject to the power of sale. *Bacot* v. *Wetmore*, 2 *C. E. Gr.* 250; *Wetmore* v. *Midmer*, 6 *C. E. Gr.* 240; *Nield* v. *Rudderow*, 12 *C. E. Gr.* 89; *S. C. on appeal*, 1 *Stew.* 274.

The power of sale given by the will to the executor was not liable to be defeated by one or more (less than the whole number) of the beneficiaries thereunder, to the prejudice of the others or any of them. All might, indeed, have elected to have the land instead of the proceeds, but the concurrence of all would have been necessary to prevent a sale, unless the power of election could have been allowed to a part without prejudice to the rest. But is too late, after the sale by the executor, to exercise the power of election. *Osgood* v. *Franklin*, 2 *Johns. Ch.* 1, 21. The purchaser at the executor's sale took title to the farm clear of the lien of the levy, and without any obligation to see to the application of the purchase-money. On paying it to the executor his duty in the premises was at an end.

The notice given by the sheriff to the executor, on the 1st of December, 1875, imposed no duty on the latter. The statement therein made, as to the issuing of an execution and a levy thereunder, was untrue. No execution had then been issued upon the judgment. The notice was not a warning of intention to issue an execution and to levy

Bolton *v.* Stretch.

thereunder, but an allegation of the then present existence of an execution and levy. Being a notification of the alleged existence of facts which had really no existence, it was of no importance whatever and devolved no duty on the executor.

Nor did any arise from the levy which was subsequently made. To impose any duty upon the executor in respect to it, it was necessary to bring it to his actual knowledge. It was incumbent on the complainant, if he desired to secure the application of the proceeds of Joseph Stretch's share of the property in the hands of the executor to the payment of his judgment, to take such steps by judicial proceedings as would effect that purpose, or at least to have given notice to the executor of his claim. In the absence of such proceedings, and of notice, he has, under the circumstances, no claim whatever upon the executor. The bill prays that the executor or Joseph Stretch may be decreed to pay to the complainant the amount of his judgment. There is no ground for equitable relief against either of them. None as against the executor, for the reasons already given, and there is none against Joseph Stretch. He has received from the executor, on his demand, his share under the will of the proceeds of the sale of the land by the executor. The levy was indeed a lien upon his interest in the land, but it was subordinate to the power. *Bacot* v. *Midmer, ubi supra.* Joseph Stretch, in receiving his share of the proceeds of the sale, incurred no liability for which the complainant is entitled to relief in equity against him, any more than he would have done had he sold and received the purchase-money for chattels (his property) levied upon under the execution and left in his possession, and sold or consumed by him after the levy.

The bill will be dismissed, with costs.